******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALLSTATE INSURANCE COMPANY *v.*
DONTE TENN ET AL.
(SC 20586)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker, and Keller, Js.

*Syllabus*

The plaintiff insurance company brought the present declaratory judgment action in the United States District Court for the District of Connecticut, seeking a determination that it was not obligated to defend and indemnify the defendant T in connection with a civil action brought against T by the defendant M. M's civil action stemmed from an incident in which he sustained injuries after T assaulted him. After the incident, T entered a plea of nolo contendere in a separate criminal prosecution to the charge of first degree assault. The plaintiff filed a motion for summary judgment in the present action, claiming that T's plea of nolo contendere relieved it of its duty to defend and indemnify T in M's civil action under a homeowners insurance policy issued by the plaintiff to T's mother in light of a criminal acts exclusion in that policy. Thereafter, the District Court, pursuant to statute (§ 51-199b (d)) and the rules of practice (§ 82-1), certified to this court the question of whether a plea of nolo contendere could be used by an insurance company in a declaratory judgment action to trigger a criminal acts exclusion to coverage. *Held* that T's plea of nolo contendere was inadmissible in the plaintiff's declaratory judgment action to prove the occurrence of a criminal act and, therefore, could not be used to trigger the criminal acts exclusion of the homeowners insurance policy: under this state's common law, as codified in the Connecticut Code of Evidence (§ 4-8A (a) (2)), a plea of nolo contendere generally cannot be admitted in a subsequent proceeding to prove the occurrence of criminal act, and the court's holding in this case was harmonious with case law from numerous jurisdictions; moreover, the purpose of the plea of nolo contendere is to facilitate the efficient disposition of criminal cases by encouraging plea bargaining, such a plea potentially allows the criminal defendant to avoid the cost of litigating both criminal and civil cases and to consolidate resources in defense of only the latter, and allowing the use of a nolo contendere plea as proof of underlying criminal conduct in subsequent civil litigation would undermine the very essence of such a plea; furthermore, the plaintiff could not prevail on its claim that it should be permitted to use T's nolo contendere plea to trigger the policy's criminal acts exclusion as a matter of public policy insofar as the general rule against using a such plea could be adequately safeguarded by enforcing the rule in M's civil action, and as T should be not be allowed to benefit from his illegal conduct, this court having concluded that there was no principled reason to rigorously enforce the restrictions imposed by § 4-8A (a) (2) against the victim of a crime in a civil case while simultaneously ignoring that rule for an insurance company in a declaratory judgment action arising out of the same set of facts, and, although no one should be allowed to profit from his or her own wrongdoing, the exclusion of T's plea in no way precluded the plaintiff from seeking to enforce the policy's criminal acts exclusion in its declaratory judgment action by presenting evidence concerning T's criminal conduct, other than T's plea, to establish the applicability of that exclusion.

(*Two justices concurring in part and dissenting
in part in one opinion*)

Argued September 8—officially released February 23, 2022*

*Procedural History*

Action for judgment declaring that the plaintiff had no duty to defend and indemnify the named defendant in an action seeking to recover damages for injuries sustained in an assault, brought to the United States

District Court for the District of Connecticut, where the court, *Arterton, J.*, denied the plaintiff's motion for summary judgment; thereafter, the court, *Arterton, J.*, certified a question of law to this court concerning whether a plea of nolo contendere and the resulting conviction can be used to trigger a criminal acts exclusion in an insurance policy.

*Paige D. Beisner*, with whom, on the brief, was *Michele C. Wojcik*, for the appellant (plaintiff).

*Ronald S. Johnson*, for the appellee (named defendant).

*Eamon T. Donovan*, for the appellee (defendant Tailan Moscaritolo).

*Opinion*

KAHN, J. The question in this case is whether the plaintiff, Allstate Insurance Company (Allstate), can use a plea of nolo contendere entered by the named defendant, Donte Tenn, to trigger a criminal acts exclusion in a homeowners insurance policy governed by Connecticut law. Allstate commenced the present action against Tenn and another defendant, Tailan Moscaritolo, in the United States District Court for the District of Connecticut, seeking a judgment declaring that it has no contractual duty either to defend or to indemnify Tenn in a civil action brought against Tenn by Moscaritolo in Connecticut Superior Court. Allstate subsequently filed a motion for summary judgment in this declaratory judgment action, arguing that Tenn's plea of nolo contendere relieved it of its duty both to defend and to indemnify him as a matter of law. The parties agreed that a ruling on Allstate's motion with respect to indemnification would be premature, and, as a result, the District Court denied Allstate's motion with respect to that issue without prejudice. The only remaining question, which the District Court, in turn, certified to this court pursuant to General Statutes § 51-199b (d) and Practice Book § 82-1, is whether Tenn's plea of nolo contendere relieved Allstate of its duty to defend by triggering the policy's criminal acts exclusion as a matter of law. For the reasons that follow, we conclude that Tenn's plea of nolo contendere is inadmissible to prove the occurrence of a criminal act and, therefore, cannot be used to trigger the policy's criminal acts exclusion.

The following undisputed facts and procedural history, which relate to three distinct judicial proceedings, are relevant to our consideration of the District Court's certified question. Those three proceedings are (1) the criminal case charging Tenn with an assault on Moscaritolo; *State* v. *Tenn*, Superior Court, judicial district of Middlesex, Docket No. CR-16-0210490-T; (2) the civil action brought by Moscaritolo against Tenn in the Superior Court; *Moscaritolo* v. *Tenn*, Superior Court, judicial district of Middlesex, Docket No. CV-18-6023052-S; and (3) the present declaratory judgment action filed by Allstate against Tenn and Moscaritolo in federal court.[1] See *Allstate Ins. Co.* v. *Tenn*, United States District Court, Docket No. 3:19-cv-00432 (JBA) (D. Conn. March 18, 2021). For the sake of clarity, we briefly review each of these three proceedings in turn.

The facts related to the criminal case against Tenn are straightforward. On October 10, 2016, Moscaritolo was hit repeatedly with a metal baseball bat while walking on a public street in the city of Middletown. Tenn was identified by several witnesses as the perpetrator of that assault and, a few weeks later, was arrested by the police. On November 6, 2018, Tenn entered a plea of nolo contendere to the charge of assault in the first

degree in connection with that incident. At the plea hearing, the prosecutor summarized the evidence related to the assault and detailed the agreement the state had reached with Tenn in exchange for his plea. During the court's subsequent canvass, Tenn confirmed that he had heard the charge against him and the evidence recited by the prosecutor, and stated that he elected not to contest that charge.[2] Prior to the court's canvass, the defendant completed, signed and submitted the required Plea of Nolo Contendere Form (JD-CR-60), which provides:

"I am the defendant in the case named above and:

"I have personally been in the court and have been advised of my rights;

"I have had the complaint in this case read to me or gave up my right to have the complaint read to me;

"I do not want to contest the claims of the [s]tate of Connecticut that are in the complaint; and

"I will not contend with the [s]tate of Connecticut about the complaint.

"By signing this paper, I plead nolo contendere (no contest) and put myself on the clemency of the court."

During the canvass, the prosecutor informed the court that there was a pending civil case filed by the victim, Moscaritolo, against Tenn and his mother's insurance company. He further advised the court that Tenn was cooperating in that civil lawsuit, and, for that reason, the victim was "not necessarily seeking much jail time" and that he may be monetarily indemnified for the injuries he suffered. Ultimately, Tenn received a sentence of twelve years of imprisonment, execution suspended after two years, and three years of probation in connection with this conviction.

Moscaritolo's separate civil action against Tenn sought to recover damages for personal injuries resulting from the same assault.[3] That action, which is presently awaiting trial before the Superior Court, contains four counts: (1) assault, (2) negligent assault, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. The first and third counts allege that Moscaritolo's injuries resulted from Tenn's "wilful, wanton, intentional and malicious acts . . . ." The second and fourth counts, by contrast, allege that Tenn acted negligently by swinging the baseball bat near Moscaritolo wildly and without warning.[4] Allstate is currently providing a legal defense to Tenn in that civil action subject to a reservation of rights.

Allstate then commenced a third action in District Court, seeking a judgment declaring that it was not contractually obligated to defend or to indemnify Tenn in Moscaritolo's civil action. Allstate conceded that Tenn qualified as an "insured person" within the meaning of a homeowners insurance policy purchased by

Tenn's mother, Stephanie L. Patrick, that was in force at the time of the assault. (Internal quotation marks omitted.) It also conceded that the terms of that policy generally obligated it to pay "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence . . . ." (Emphasis omitted; internal quotation marks omitted.) Allstate nonetheless alleged, inter alia,[5] that it had no duty to defend or to indemnify Tenn because any coverage for his actions was precluded under the policy's criminal acts exclusion. That exclusion provides in relevant part: "[Allstate does] not cover bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts of the insured person. This exclusion applies even if:

"(a) such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or

"(b) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

"This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime. . . ." (Emphasis omitted.)

In its motion for summary judgment, Allstate claimed that there were no genuine issues of material fact relating to the application of the criminal acts exclusion and that, as a result, it was entitled to a declaratory ruling barring coverage as a matter of law. In advancing this argument, Allstate specifically argued that "Tenn's plea of nolo contendere precludes any argument that he did not commit [a] crime." The District Court reserved decision on this point of law and subsequently certified the following question to this court: "Whether a plea of nolo contendere and the resulting conviction can be used to trigger a criminal acts exclusion in an insurance policy." This court accepted that certified question, and this proceeding followed.

The applicable standard of review is well established. "[C]onstruction of a contract of insurance presents a question of law . . . [that] this court reviews de novo. . . . The determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . In evaluating the expectations of the parties, we are mindful of the principle that provisions in insurance contracts must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters and that the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . . [W]hen the words of an insurance contract are, without

violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses. . . . When construing exclusion clauses, the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim. . . . While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 333 Conn. 343, 364–65, 216 A.3d 629 (2019); see also *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 154, 61 A.3d 485 (2013).

In this state, the general rule is that a plea of nolo contendere in a criminal case is inadmissible in a subsequent proceeding to prove the occurrence of a criminal act. See *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 51, 757 A.2d 501 (2000) ("under our law a prior plea of nolo contendere and a conviction based thereon may not be admitted into evidence in a subsequent civil action or administrative proceeding to establish either an admission of guilt or the fact of criminal conduct"); see also *Lawrence* v. *Kozlowski*, 171 Conn. 705, 711–12 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, 125 Conn. 705, 713, 8 A.2d 5 (1939). Indeed, the operation of this principle is what makes a plea of nolo contendere unique. See *State* v. *Martin*, 197 Conn. 17, 21 n.7, 495 A.2d 1028 (1985) ("[t]he only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case"), overruled in part on other grounds by *State* v. *Das*, 291 Conn. 356, 968 A.2d 367 (2009); *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 107 Conn. App. 321, 328 n.7, 945 A.2d 494 (2008) ("A plea of nolo contendere is a declaration by the accused that he will not contest the charge. Its inconclusive and ambiguous nature dictates that it should be given no currency beyond the particular case in which it was entered."), rev'd on other grounds, 298 Conn. 824, 6 A.3d 1142 (2010); *State* v. *Bridgett*, 3 Conn. Cir. 206, 208–209, 210 A.2d 182 (1965) ("[t]he only basic characteristic of the plea of nolo contendere [that] differentiates it from a guilty plea is that the defendant is not estopped from denying the facts to which he pleaded nolo contendere in a subsequent judicial civil proceeding"); E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 8.13.5 (c) (2), p. 532 ("A plea of nolo contendere is not a confession of guilt, but just a plea that the accused will not contest the issue of guilt and will be sentenced as a guilty person. . . . [It] is not an admission of guilt and cannot be used as an admission in a

later proceeding." (Internal quotation marks omitted.));
see also *State* v. *Faraday*, 268 Conn. 174, 204–205 and
n.17, 842 A.2d 567 (2004) (concluding that defendant
violated terms of probation imposed following *Alford*[6]
plea by failing to admit to crime during course of treatment and noting, in dictum, that plea of nolo contendere, like *Alford* plea, has "the same legal effect as a
plea of guilty *on all further proceedings within the
indictment*" but "may not be used against the defendant
as an admission in a subsequent criminal or civil case"
(emphasis added; internal quotation marks omitted));
2 B. Holden & J. Daly, Connecticut Evidence (1988)
§ 103f, p. 1030 ("[a] plea of nolo contendere is not admissible as an admission by a party").[7]

This common-law rule was ultimately codified in § 4-8A (a) of the Connecticut Code of Evidence, which
provides in relevant part: "Evidence of the following
shall not be admissible in a civil or criminal case against
a person who has entered a plea of guilty or nolo contendere in a criminal case or participated in plea negotiations in such case, whether or not a plea has been
entered . . . (2) a plea of nolo contendere . . . or any
statement made in conjunction with such a plea . . . ."
This language is similar to both the Federal Rules of
Evidence and codes of evidence in a number of other
states. See, e.g., Fed. R. Evid. 410 (a) (2); Me. R. Evid.
410; N.H. R. Evid. 410; R.I. R. Evid. 410; see also Supreme
Judicial Court Advisory Committee on Massachusetts
Evidence Law, Massachusetts Guide to Evidence (2021)
§ 410, p. 47.

Consistent with our common law and rules of evidence, our rules of practice vest Superior Court judges
with discretion to accept pleas of nolo contendere in
criminal cases. See Practice Book §§ 37-7 and 39-18.
Specifically, Practice Book § 39-18 provides in relevant
part that "[a] plea of nolo contendere shall be in writing,
shall be signed by the defendant, and, when accepted
by the judicial authority, shall be followed by a finding
of guilty." A plea of nolo contendere allows a defendant
to accept a punishment, often lighter, as if he or she
were guilty, and yet still maintain his or her innocence.
See J. Kuss, Comment, "Endangered Species: A Plea
for the Preservation of *Nolo Contendere* in Alaska," 41
Gonz. L. Rev. 539, 561–62 (2006) ("The plea was not an
express admission of guilt, but rather was viewed as 'a
consent by the defendant that he may be punished as
if he were guilty and a prayer for leniency.' It was 'a mere
statement of unwillingness to contest and no more.' In
fact, the only time that a plea of nolo contendere had
the same effect as a guilty plea was in the criminal case
it which it was entered." (Footnotes omitted.)).

The single, narrow question now before this court is
whether, under Connecticut law, a plea of nolo contendere can be used by an insurance company in a declaratory judgment action to prove criminal conduct that

would trigger a contractual exclusion to coverage. The simple answer to that question under our common law, as codified in § 4-8A (a) of the Connecticut Code of Evidence, is that a plea of nolo contendere cannot be used as proof of criminal conduct.

Although neither the parties nor the question certified to us by the District Court doubts the wisdom of this rule, we pause to observe the pragmatic and practical considerations underlying the plea itself. Its purpose, at base, is to facilitate the efficient disposition of criminal cases by encouraging plea bargaining. See *Elevators Mutual Ins. Co.* v. *J. Patrick O'Flaherty's, Inc.*, 125 Ohio St. 3d 362, 365, 928 N.E.2d 685 (2010); see also P. Healey, Note, "The Nature and Consequences of the Plea of Nolo Contendere," 33 Neb. L. Rev. 428, 433–34 (1954); 21 Am. Jur. 2d 797–98, Criminal Law § 655 (2016). It provides criminal defendants with a means to resolve the criminal case against them while avoiding the potentially harsher penalties occasioned when a defendant proceeds to trial. See J. Kuss, supra, 41 Gonz. L. Rev. 560 ("a criminal defendant may just find it preferable to accept a light punishment offered by the prosecution in exchange for a nolo contendere plea, rather than face far worse consequences both in terms of criminal punishment and civil liability" (internal quotation marks omitted)). The financial consequences include the costs of litigating both criminal and civil cases, which may lead a defendant who claims innocence to accept a favorable plea in order to consolidate resources in defense of only the latter. Id. ("It is not uncommon for a criminal defendant, even if innocent, to plead nolo contendere—particularly if the overwhelming strength of the state's case makes it futile to go to trial or if the defendant has no basis for pleading guilty because she simply cannot remember committing any crime. Still other defendants may use a nolo plea as a psychological crutch. Whatever the case, there are a litany of reasons why a criminal defendant may accept a nolo plea and it should not be casually assumed that a defendant has sufficient incentive to litigate merely because she is charged with a serious offense. Even innocent defendants may have a broad range of motivations for entering a plea of nolo contendere rather than contesting a charge." (Footnotes omitted; internal quotation marks omitted.)); see also F. Easterbrook, "Criminal Procedure as a Market System," 12 J. Legal Stud. 289, 320 (1983).

In addition to affording defendants the opportunity to enter into a favorable plea agreement without fearing the financial consequences that would result from an admission of guilt, "the nolo plea facilitates the expeditious administration of criminal justice." J. Kuss, supra, 41 Gonz. L. Rev. 564; see also id. ("[t]he inherent utility of the plea lies in the fact that it encourages plea bargaining and dispenses with lengthy and expensive trials" (internal quotation marks omitted)). Allowing the

use of nolo contendere pleas as proof of underlying criminal conduct in subsequent civil litigation would, thus, undermine the very essence of the nolo contendere plea itself. See id., 562.

The parties accurately observe that, notwithstanding this evidentiary limitation and the principles of public policy underlying it, the use of a nolo contendere plea does not always shelter criminal defendants from the collateral consequences triggered by the resulting criminal conviction. Courts have, for example, found that a conviction of operating a vehicle under the influence following a plea of nolo contendere can cause an administrative suspension of a Connecticut driver's license. See, e.g., *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 333–35, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999). Similarly, a conviction of a drug related felony following a plea of nolo contendere can lead to the suspension of a physician's certificate of registration to distribute a controlled substance under the federal Controlled Substances Act, 21 U.S.C. § 801 et seq. See, e.g., *Sokoloff* v. *Saxbe*, 501 F.2d 571, 574–75 (2d Cir. 1974). Still other examples can be listed. See, e.g., annot., "Plea of Nolo Contendere or Non Vult Contendere," 152 A.L.R. 253, 290 (1944) ("Is an individual who has entered a plea of nolo contendere in one proceeding a multi-offender after a subsequent conviction in another proceeding? The answer obviously is yes . . . .").[8] Recognizing the unique nature of pleas of nolo contendere, our legislature has expressly permitted, when deemed appropriate, the existence of a conviction resulting from that plea to have collateral consequences; see, e.g., General Statutes § 36a-489 (a) (conviction following plea of nolo contendere may preclude issuance of mortgage broker license); and has compelled certain procedures governing its use. See, e.g., General Statutes § 54-1j (requiring advisement relating to immigration and naturalization consequences resulting from plea of nolo contendere). The plea of nolo contendere, thus, does not act as an absolute privilege prohibiting all collateral consequences arising from the resulting criminal conviction. See *Sokoloff* v. *Saxbe*, supra, 574 ("[when] . . . a statute (or judicial rule) attaches legal consequences to the fact of a conviction, the majority of courts have held that there is no valid distinction between a conviction upon a plea of nolo contendere and a conviction after a guilty plea or trial").[9]

The present case does not, however, require us to engage in a lengthy or detailed discussion of the permissible collateral impacts of convictions resulting from pleas of nolo contendere under Connecticut law because, quite simply, the contractual exclusion at issue does not turn on the existence of a criminal conviction. To the contrary, the policy expressly states that this exclusion "applies *regardless of whether or not* such insured person is actually charged with, or convicted

of a crime."[10] (Emphasis altered.) This plain and unambiguous language makes either the *existence or absence* of a criminal conviction contractually irrelevant.[11] The provision, instead, is triggered by the commission of the "intentional or criminal acts of [an] insured person." (Emphasis omitted.) Tenn's plea of nolo contendere is inadmissible as proof of criminal acts under § 4-8A (a) of the Connecticut Code of Evidence and our case law.[12] See *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–13 (proof of nolo contendere plea and resulting conviction were inadmissible to support factual finding of criminal conduct).

This result is harmonious with case law from numerous other jurisdictions. See, e.g., *Safeco Ins. Co. of Illinois* v. *Gasiorowski*, Docket No. 20-3877, 2021 WL 2853255, *3 (E.D. Pa. July 7, 2021) (insured's plea of nolo contendere did not trigger criminal acts exclusion in homeowners insurance policy); *Lichon* v. *American Universal Ins. Co.*, 435 Mich. 408, 414–15, 459 N.W.2d 288 (1990) (plea of nolo contendere and resulting conviction were inadmissible in subsequent civil litigation to trigger insurance contract's antifraud exclusionary clause); *Safeco Ins. Co. of America* v. *Liss*, 303 Mont. 519, 530–32, 16 P.3d 399 (2000) (previous nolo contendere plea to crime of assault did not preclude insured from contesting insurer's assertion that incident fell within policy's criminal acts exclusion); *Elevators Mutual Ins. Co.* v. *J. Patrick O'Flaherty's, Inc.*, supra, 125 Ohio St. 3d 367 (evidence of insured's no contest pleas and subsequent convictions for arson and insurance fraud was inadmissible in civil action to trigger criminal acts exclusion); *Korsak* v. *Prudential Property & Casualty Ins. Co.*, 441 A.2d 832, 834 (R.I. 1982) (rejecting argument that insured's plea of nolo contendere entitled insurer to summary judgment); see also *Hopps* v. *Utica Mutual Ins. Co.*, 127 N.H. 508, 511, 506 A.2d 294 (1985) (Souter, J.) ("a plea of nolo contendere in an earlier criminal prosecution will raise no estoppel, since that plea neither controverts nor confesses the facts [on] which the conviction must rest").

Cases cited by Allstate reaching the opposite result are distinguishable. Various decisions from the state of California; see, e.g., *20th Century Ins. Co.* v. *Schurtz*, 92 Cal. App. 4th 1188, 112 Cal. Rptr. 2d 547 (2001); *Century-National Ins. Co.* v. *Glenn*, 86 Cal. App. 4th 1392, 104 Cal. Rptr. 2d 73 (2001); are inapposite because those cases involved the commission of felonies and the legislature of that state has, by statute, provided that a plea of nolo contendere to a felony "shall be the same as that of a plea of guilty for all purposes." Cal. Penal Code § 1016 (Deering 2008). An unpublished decision from Kentucky; *Eberle* v. *Nationwide Mutual Ins. Co.*, Docket No. 2013-CA-000898-MR, 2016 WL 2609311 (Ky. App. May 6, 2016), review denied, Kentucky Supreme Court (September 15, 2016); is also unpersuasive because that case involved a plea entered pursuant

to *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Although the applicable rule of evidence in that state; see Ky. R. Evid. 410; was amended in 2007 to allow for the admission of *Alford* pleas in subsequent cases, that rule continues to preclude the admission of nolo contendere pleas. *Eberle* v. *Nationwide Mutual Ins. Co.*, supra, *7.[13]

Allstate contends that it should be permitted to use Tenn's plea of nolo contendere to trigger the policy's criminal acts exclusion as a matter of public policy.[14] Specifically, Allstate argues that (1) the general rule against using pleas of nolo contendere can be adequately safeguarded by simply enforcing that rule in Moscaritolo's civil action before the Superior Court, and (2) excluding proof of Tenn's nolo contendere plea will allow him to benefit from his own illegal conduct.

We disagree on both points. First, we see no principled reason to rigorously enforce the restrictions imposed by § 4-8A (a) of the Connecticut Code of Evidence on the victim of a crime in a tort case while simultaneously ignoring that rule for a corporation in a declaratory judgment action arising out of the very same set of facts. The continued, uniform application of that rule ensures that the prospect of civil liability does not control the course of related criminal proceedings. Second, although we wholeheartedly endorse the well established legal maxim that no one should be allowed to profit from his or her own wrongdoing, the exclusion of Tenn's plea of nolo contendere in no way precludes Allstate from vindicating that principle by seeking to enforce the criminal acts exclusion on the basis of the evidence that led to Tenn's prosecution and conviction. Indeed, Allstate is no less able to enforce the exception in this case than it would be in a case in which the state declined to pursue a criminal prosecution of the insured party in the first instance.

Of course, neither the District Court's denial of summary judgment on the duty to defend nor the decision that this court reaches today will mark an end to Allstate's ability to seek further relief from liability. Allstate may well still be able to marshal other evidence to establish the applicability of the criminal acts exclusion in a subsequent motion for summary judgment or otherwise establish the same point at trial. For the reasons stated previously in this opinion, however, Tenn's plea of nolo contendere cannot be used by Allstate to satisfy that burden.

The answer to certified question is: No.

No costs shall be taxed in this court to either party.

In this opinion ROBINSON, C. J., and MULLINS, ECKER and KELLER, Js., concurred.

* February 23, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Records of these proceedings before the Superior Court are a proper subject of judicial notice. See, e.g., *Shirley P.* v. *Norman P.*, 329 Conn. 648,

660, 189 A.3d 89 (2018); *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527–28, 294 A.2d 633 (1972).

[2] The relevant portions of the canvass conducted by the court, *Keegan, J.*, include the following:

"The Court: Now, is this going to be a straight guilty plea, nolo?

"[Defense Counsel]: It's nolo. I filed here, Your Honor."

After confirming the terms of the agreement with Tenn, the court asked the clerk to put Tenn to plea:

"The Clerk: Donte Tenn, in Docket Number CR-16-0210490, to the charge of assault in the first degree, on or about October 10, 2016, in violation of Connecticut General Statutes § 53a-59, how do you plead?

"[Tenn]: No contest."

After confirming with the clerk that the nolo contendere plea form typically completed was in proper form, the court asked the prosecutor to summarize the factual basis of the plea. The court went on to conduct a full canvass of Tenn to ensure that his decision not to contest the charges was, indeed, voluntary. Following the canvass, the court concluded: "[The] court will accept the plea [and] find it knowingly and voluntarily made with the assistance of competent counsel. There is a factual basis, so the plea of nolo contendere is accepted, and a finding of guilty may enter."

[3] Moscaritolo alleged that the assault caused traumatic brain injuries, skull fractures, an intracranial hemorrhage, an epidural hematoma, a left distal tibial shaft fracture, a concussion, posttraumatic stress disorder, and headaches.

[4] We note that, in some jurisdictions, creative pleading alone may not always suffice to avoid an award of summary judgment in favor of an insurer. See, e.g., *United National Ins. Co.* v. *Tunnel, Inc.*, 988 F.2d 351, 354–55 (2d Cir. 1993) (The court concluded that, under New York law, an insurance policy exclusion barred coverage for injuries resulting from an assault by a nightclub bouncer, notwithstanding the fact that the underlying pleading sounded in negligence, stating: "On a motion for summary judgment the court must pierce through the pleadings and their adroit craftsmanship to get at the substance of the claim. . . . [I]t is plain that [the victim] is alleging that the bouncer intentionally struck him. And that makes it a claim for battery—not covered by the insurance policy."); see also E. Pryor, "The Stories We Tell: Intentional Harm and the Quest for Insurance Funding," 75 Tex. L. Rev. 1721, 1728, 1735 n.45 (1997) (noting that "[m]erely adding an allegation of negligence will not necessarily create a duty to defend" and that, in some cases, "the intentional nature of the harm may be so overwhelming that it resists reshaping, or the physical evidence may be flatly inconsistent with the plaintiff's effort to characterize the injury as negligently inflicted").

[5] Allstate also alleged that the assault was intentional and, therefore, did not qualify as an "occurrence" and that Tenn had failed to provide it with adequate notice. (Internal quotation marks omitted.) Because the question certified by the District Court relates solely to the impact of Tenn's plea of nolo contendere on the policy's criminal acts exclusion, no further discussion of these additional claims is necessary.

[6] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[7] The use of a plea of nolo contendere, thus, in no way limits a trial court's ability to impose forms of financial punishment, such as restitution, in the context of the criminal action in which the plea is entered. See, e.g., *State* v. *Woodtke*, 130 Conn. App. 734, 737–38, 25 A.3d 699 (2011); *State* v. *Daley*, 81 Conn. App. 641, 643 n.2, 841 A.2d 243, cert. denied, 269 Conn. 910, 852 A.2d 740 (2004); *State* v. *Klinger*, 50 Conn. App. 216, 217–18, 718 A.2d 446 (1998); cf. Fed. R. Crim. P. 11 (b) (1) ("[b]efore the court accepts a plea of . . . nolo contendere . . . the court must inform the defendant of . . . (K) the court's authority to order restitution"); see also, e.g., *Baugh* v. *State*, 635 S.W.3d 9, 11 (Ark. App. 2021); *People* v. *Roddy*, 498 P.3d 136, 139 (Colo. 2021).

[8] Although a plea of nolo contendere can also be used by the state to establish a violation of probation; see *State* v. *Daniels*, 248 Conn. 64, 73, 726 A.2d 520 (1999), overruled in part on other grounds by *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005); such a practice is not properly characterized as a policy based exception to the rule set forth in § 4-8A (a) of the Connecticut Code of Evidence. The admissibility of the plea in that particular context results, instead, from the inapplicability of the Code of Evidence to probation matters. Conn. Code Evid. § 1-1 (d) ("[t]he [c]ode, other than with respect to privileges, does not apply in proceedings such as . . . (4) [p]roceedings

involving probation”).

[9] Our use of this same quotation from *Sokoloff* in *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 51 n.13, should not be read to indicate any specific disagreement with the legal reasoning of the United States Court of Appeals for the Second Circuit. Our remark merely recognized, as we do again today, that the collateral impacts of the plea are not always the subject of unanimous agreement among courts.

[10] Criminal acts exclusions in other insurance policies have occasionally been drafted to turn explicitly on the existence of a criminal conviction, regardless of how that conviction was obtained. See *Sosinski* v. *Unum Life Ins. Co. of America*, 15 F. Supp. 3d 723, 727, 732 (E.D. Mich. 2014) (concluding that exclusion in long-term disability insurance plan precluding coverage for " 'disabilities caused by, contributed to by, or resulting from' the 'commission of a crime for which you have been convicted' " was triggered by conviction resulting from insured's plea of nolo contendere); *Key* v. *Dept. of Administrative Services*, 340 Ga. App. 534, 536, 798 S.E.2d 37 (2017) (referring to contractual provision excluding coverage for " 'any dishonest, fraudulent or criminal act or omission of any [c]overed [p]arty which forms the basis of a criminal conviction, whether by verdict, plea of guilty or plea of nolo contendere' ").

[11] Even if the language of the policy merely rendered the point ambiguous, our rules of construction would still compel us to adopt the reading favoring coverage. See *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, supra, 333 Conn. 365 ("the language [of exclusion clauses] should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim" (internal quotation marks omitted)).

[12] Although this court's precedent has addressed the inadmissibility of nolo contendere pleas to prove the occurrence of a criminal act in civil actions for damages; see, e.g., *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, supra, 125 Conn. 713–14; and certain administrative appeals; see, e.g., *Lawrence* v. *Kozlowski*, supra, 171 Conn. 711–13; we have not yet addressed the application of that rule to a criminal acts exclusion in an insurance policy. Superior Court decisions confronted with this particular question have taken divergent approaches. Compare *Allstate Ins. Co.* v. *Simansky*, 45 Conn. Supp. 623, 630, 738 A.2d 231 (1998) (concluding that nolo contendere plea triggered criminal acts exclusion), with *Allstate Ins. Co.* v. *Linarte*, Superior Court, judicial district of New Britain, Docket No. CV-05-4005150-S (May 24, 2007) (43 Conn. L. Rptr. 664, 669) (declining to consider defendant's plea of nolo contendere in determining whether criminal acts exclusions applied). To the extent that the reasoning of *Simansky* is inconsistent with the reasoning of this decision, it is hereby overruled.

[13] We likewise reject Allstate's reliance on *Auto Club Group Ins. Co.* v. *Booth*, 289 Mich. App. 606, 797 N.W.2d 695 (2010). Approximately one year after the Michigan Supreme Court's decision in *Lichon*, rule 410 of the Michigan Code of Evidence was formally amended to allow use of nolo contendere pleas "to support a defense against a claim asserted by the person who entered the plea . . . ." Mich. R. Evid. 410 (2); see *Akyan* v. *Auto Club Ins. Assn.*, 207 Mich. App. 92, 98, 523 N.W.2d 838 (1994), appeal denied, 450 Mich. 939, 548 N.W.2d 626 (1995). Although that state's intermediate appellate court initially wrestled with the question of whether this language was broad enough to encompass a "claim" made by an insured; (internal quotation marks omitted) *Home-Owners Ins. Co.* v. *Bonnville*, 2006 WL 1566681, *6 (Mich. App.) (Bandstra, J., concurring in part and dissenting in part), appeal denied, 477 Mich. 953, 723 N.W.2d 900 (2006); that court now appears to have implicitly answered the question in the affirmative. See *Auto Club Ins. Assn.* v. *Andrzejewski*, 292 Mich. App. 565, 571, 808 N.W.2d 537 (2011); *Auto Club Group Ins. Co.* v. *Booth*, supra, 615. Because § 4-8A of the Connecticut Code of Evidence more closely resembles the text of the rule examined by the court in *Lichon*, we continue to view the reasoning of that decision to be most persuasive.

[14] Allstate asserts, and we agree, that this court possesses an inherent authority to amend the rules of evidence on a case-by-case basis. See *State* v. *DeJesus*, 288 Conn. 418, 439, 953 A.2d 45 (2008); see also *State* v. *Gore*, 342 Conn. 129, 133,      A.3d      (2022).